UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
GARY LA BARBERA, THOMAS
GESUALDI, LOUIS BISIGNANO,
ANTHONY  PIROZZI, DOMINICK
MARROCCO, FRANK FINKEL,
 JOSEPH FERRARA, MARC                                    08CV3274 (DLI) (ALC)
HERBST, THOMAS PIALI, and                                08CV3983 (DLI) (ALC)
DENISE RICHARDSON, as Trustees and
Fiduciaries of the Local 282 Welfare,
Pension, Annuity, Job Training, and Vacation             REPORT AND
and Sick Leave Trust Funds,                              RECOMMENDATION

                    Plaintiffs,

          v.


UNITED CRANE AND
RIGGINGS SERVICES, INC.,

                    Defendant.

-------------------------------------------------X
GARY LA BARBERA, THOMAS
GESUALDI, LOUIS BESIGNANO,
ANTHONY PIROZZI, DOMINICK
MARROCCO, FRANK FINKEL,
JOSEPH FERRARA, MARC
HERBST, THOMAS PIALI, and
DENISE RICHARDSON, as Trustees and
Fiduciaries of the Local 282 Welfare,
Pension, Annuity, Job Training, and Vacation
and Sick Leave Trust Funds,

                    Plaintiffs,

          v.


MARIAN DOUGLAS SMITH,

                    Defendant.
-------------------------------------------------X

1

**CARTER, United States Magistrate Judge:**

The above-referenced actions were referred to the undersigned for a Report and Recommendation on the pending motion for summary judgment filed by plaintiffs in the action styled La Barbera v. United Crane and Rigging Servs., Inc., Docket No. 08CV3274, and on the cross-motions for summary judgment brought in the action styled La Barbera v. Smith, Docket No. 08CV3983. Based on the submissions of the parties, and for the reasons stated below, the Court recommends DENYING Plaintiffs' motion for summary judgment against United Crane and Rigging Services, DENYING Plaintiffs' motion for summary judgment against Marian Douglas Smith, and DENYING Smith's motion for summary judgment.

BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Plaintiffs Gary La Barbera, Thomas Gesualdi, Louis Besignano, Anthony Pirozzi, Dominick Marrocco, Frank Finkel, Joseph Ferrara, Marc Herbst, Thomas Piali, and Denise Richardson ("Plaintiffs" or "Trustees") are trustees, fiduciaries and the plan sponsor of the Local 282 Pension Trust Fund (the "Fund"). The Fund is a multiemployer pension plan that provides benefits to employees, former employees and their dependents and is covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461.

*Prior Litigation*

At all relevant times, defendant Marian Douglas Smith ("Smith" or "Defendant Smith") owned and was the sole principal of non-parties Unique Rigging Corp. and Unique Warehousing

Corporation (collectively "Unique Rigging"), two New York corporations. Smith also owns the property located at 11-14 35th Avenue, Long Island City, New York (the "Property"), which was Unique's principal place of business. Unique Rigging and the Fund were signatories to a collective bargaining agreement obligating Unique Rigging to make certain contributions into the Fund, calculated on the basis of the number of hours of service performed by covered employees.

In 2001, Plaintiffs brought an action in this district against Unique for unpaid contributions for the period July 1995 through January 2003. (See King v. Unique Rigging Corp., No. 01 CV 3797 (DLI)(VVP).) On October 27, 2006, Plaintiffs obtained a judgment against Unique for $945,158.77 in unpaid contributions and an amount almost equal to that in interest, fees and costs. (See id. at Docket No. 72.) Plaintiffs have not been successful in enforcing this judgment against Unique.

In April 2007, Unique Rigging again stopped making the appropriate contributions and in July 2007, filed for Chapter 11 bankruptcy protection. In December 2007, the Chapter 11 petition was converted to a Chapter 7 liquidation and the bankruptcy court appointed a trustee, Richard O'Connell (the "Trustee") in connection therewith. While Defendants allege that further Unique Rigging-related correspondence was forwarded directly to the Trustee, a delivery addressed to Unique Rigging was signed for by "T. Bowen" at the Property on July 7, 2008. (Def. R. 56.1 Stat. ¶ 10, Bauman Decl. Ex. 9.)

A copy of one certified mail receipt (the "Receipt") accompanies Plaintiffs exhibits, though Plaintiffs claim to have sent two letters. (Bauman Decl. Ex. 9.) The first letter, dated June 26, 2008 (the "Withdrawal Liability Letter"), states that Plaintiffs at that time considered Unique Rigging to have withdrawn from the Fund, and demands a total of $340,485. (Bauman

Decl. Ex. 9.)  The Withdrawal Liability Letter offers Unique Rigging a payment schedule commencing with a $2,969.27 payment due on July 1, 2008.  (Id.)   A second letter was allegedly sent to Unique Rigging on or about July 3, 2008 ("Notice of Default") and states that Unique Rigging's failure to remit the first $2,969.27 payment constitutes a default on certain ERISA obligations.  (Id.)   Prior to the dates of both letters, and pursuant to the Chapter 7 proceedings, Unique Rigging was shut down and ceased doing business.  Defendants deny both knowledge of the letters and of  "T. Bowen."

*United*

At that time of Plaintiffs' letters, the Property was occupied by a different rigging company, to wit: Defendant United Crane and Rigging Services ("United"), which was owned by Defendant Smith's son Glenn Smith ("Glenn"), and which was formed during the pendency of the Chapter 7 Proceedings.  Kim Smith ("Kim"), Defendant's Smith's daughter, and Glenn subsequently became co-owners of United.  Both Glenn and Kim previously worked for Unique Rigging, as did all but two of at least seven other United employees.  (Compare Pls. R. 56.1 Stat. ¶ 25 with Kim Smith Aff. ¶¶ 16-17. [1])

In late 2007, Smith met with Glenn and Kim and decided that Glenn ought to own the new company.  In early 2008, Smith extended $250,000 to United without aid of a loan agreement.  Another $40,000 loan followed, and Smith refinanced mortgages on the Property to assist United.  Smith's contributions constituted the bulk of capital invested in United at its inception.  (Compare Pls. R. 56.1 Stat. ¶ 24 with Glenn Dep. at 75:18-22.)

---

[1] This, and subsequent reference to the parties' Local Rule 56.1 Statements, shall refer to those filed in the action involving Plaintiffs and United.

United performs functions similar to Unique Rigging, although United performs these jobs on a smaller scale. (Pls. R. 56.1 Stat. ¶ 16; Bauman Decl. Ex. 3 ("Glenn Smith Dep.") at 38:22-42:1) Bauman Decl. Ex. 4 ("Kim Smith Dep.") at 53:17-54:17.) In addition to employing several Unique staff members, United also uses equipment formerly used by Unique. (Pls. R. 56.1 Stat. ¶ 43; Kim Aff. ¶¶ 24-26.) United pays rent to Defendant Smith at a below-market rate of $10,000 per month, and when it cannot meet this amount, rent is paid late. (Pls. R. 56.1 Stat. ¶¶ 45-46; Kim Smith Dep. at 28:6-25.) Additionally, United has paid Smith's credit card bill, worked for many of the same companies as Unique and has invoiced a customer for work performed by Unique. (Pls. R. 56.1 Stat. ¶¶ 49, 51,52; Kim Smith Dep. at 43:1-45:3.)

*The Motions*

The Trustees filed suit against United on August 13, 2008, and against Smith on September 29, 2008. As to United, Plaintiffs attempt to enforce the 2006 judgment obtained against Unique on a theory of successor liability. The complaint against Smith alleges that, pursuant to 29 USC § 1301(b)(1) ("Section 1301"), he is jointly and severally liable for Unique's more recent 2007 withdrawal from the fund.

Following separate pre-motion conferences in each action, the parties were granted leave to file summary judgment motions and were directed to indicate therein the effect, if any, of the bankruptcy proceedings (the "Bankruptcy Proceedings") on those in the district court. None of the Motions argued that the there should be delay in resolving the Motions based on the Bankruptcy Proceedings. However, subsequent to briefing, on January 28, 2010, counsel for Defendants[2] wrote to the Court requesting a stay of both actions without deciding the Motions on

---

[2] The parties are represented by the same counsel in both cases.

account of the bankruptcy court's referral to mediation of an adversary proceeding between the Trustee and Defendant Smith, alleging that he commingled funds with Unique. (Letter of 1/28/10 to Court.) Judge Irizarry denied the request.

## DISCUSSION

I.     Standing

Defendants argue that Plaintiffs lack standing to bring this action in the district court because their claims are the property of Unique's bankruptcy estate. They are correct, in part.

"Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, inter alia, on the rights of the debtor and on certain rights of the debtor's creditors." St Paul Fire and Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688, 700 (2d Cir. 1989). "[W]here it is established that the underlying cause of action is property of a debtor's estate and only properly assertable by a trustee or debtor-in-possession, a creditor may not avail itself of the benefit of that cause of action unless the creditor obtains standing to commence such cause of action." In re Enron, No. 01 B 16034 (AJG), 2003 Bankr. LEXIS 330, at *1 (Bankr. S.D.N.Y. Apr. 17, 2003). This is true because the "[p]roperty of [a bankrupt] estate does not belong to any individual creditor," but to all creditors, subject to bankruptcy distributions. See Kalb v. Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993); see also Steinberg v. Buczynski, 40 F.3d 890, 891 (7th Cir. 1994) ("The role of a trustee in bankruptcy. . . is to collect any money that may be owing to the bankrupt entity."). Therefore, "to establish standing. . . plaintiffs must demonstrate that the entitlements they seek to enforce are not those of [the estate]." Maney v. Fischer, No. 96 CV 561 (KMW), 1998 WL 151023, at *2, (S.D.N.Y. Mar. 31, 1998). Property of the estate includes claims that the trustee has a right to assert under New York law, and are general to the

corporation rather than personal to the creditor. <u>See</u> <u>Butner v. United States</u>, 440 U.S. 48, 54-5, 99 S.Ct. 914, 918 (1979); <u>In re Alper Holdings, USA, Inc.</u>, 398 B.R. 736, 759 (Bankr. S.D.N.Y. 2008) (<u>citing</u> <u>Kalb</u>, 8 F.3d at 132 <u>and</u> <u>St. Paul</u>, 884 F.2d at 700-702).


    A. *Claims Against United*

       "Under New York law, a corporation may pierce its own corporate veil. Consequently when New York law applies . . . a bankruptcy trustee has standing to assert claims based upon piercing the corporate veil or alter ego liability, and creditors are precluded from pursuing those claims until they have been abandoned" by the trustee. <u>Jackson v. Corporategear</u>, No. 04 CV 10132 (DC), 2005 WL 3527148, at *3 (S.D.N.Y. Dec. 21, 2005) (citations omitted). Plaintiffs argue that the Bankruptcy Trustee does not have the right to bring a successor claim "[b]ecause the claim does not involve any allegations that United looted, defrauded or injured Unique in any manner." (Pls. Reply Mem. at 4.) However, a successor claim does not necessarily involve looting, fraud or injury to the predecessor. It merely holds one corporate entity liable for the debt of another. <u>See</u>, <u>e.g.</u>, <u>Schumacher v. Richards Shear Co.</u>, 59 N.Y. 2d 239, 245 (N.Y. 1983) (successor liability can attach when "the purchasing corporation was a mere continuation of the selling corporation").

       A more difficult question posed by the facts of this case is whether the claim asserted by Plaintiffs is general to the corporation or personal to the Fund. "A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause. But allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors." <u>Koch Refining v. Farmers Union Cent. Exch.</u>, 831 F.2d 1339, 1348-9 (7th Cir. 1987); <u>see</u> <u>also</u> <u>National Amer. Ins. Co. v. Ruppert Landscaping Co.</u>, 187 F.3d

439, 441 (4th Cir. 1999) (affirming dismissal for lack of standing where claims were "so similar in object and purpose" that bankruptcy trustee was the more appropriate claimant); St. Paul, 884 F.2d at 701 ("If a claim is a general one, with no particularized injury resulting from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim.").

There has been no suggestion that an action to enforce a judgment entered in favor of the Fund belongs to any other creditor in the Bankruptcy Proceeding or can equally be asserted by any other creditor. However, that alone does not make the action "personal" to the Fund for bankruptcy purposes. The claim, made by Plaintiffs, that United ought to be held liable for the debts of Unique is not unique to the Funds. *Any* judgment-holding creditor of Unique could make Plaintiffs' argument and therefore, the claim cannot be maintained while the Bankruptcy Trustee still has it available to him. See In re Enron, 2003 Bankr. LEXIS 330, at * 12 ("Allowing the trustee or debtor-in-possession to pursue the claim avoids the prospect of creditors seeking to gain advantage over other creditors by pursuing the alter ego claims on a first-come first-serve basis."); cf. In re Teknek, LLC, 563 F.3d 639, 646 (7th Cir. 2009 ("Individual creditors retain the right to bring 'personal' claims that do not implicate the trustee's purpose."). This case is thus distinguishable from the cases in which an individual creditor's suit may proceed *after* the Bankruptcy Trustee's work has come to a close. See Chicago Truck Drivers v. Tasemkin, 59 F.3d 48 (7th Cir. 1995) (suit by fund against debtor's successor permitted to proceed where bankruptcy case closed); Jackson, 2005 WL 3527148, at *4 (creditor's action may proceed where "the trustee is no longer available to pursue the alter ego claim and there is no longer an estate to benefit from any such suit").

Plaintiffs are creditors in the Bankruptcy, Smith was the owner of the Debtor-company and United acquired much of the Debtor's estate (under circumstances that Plaintiffs believe extend liability from the Debtor to United). Plaintiffs claim that because Unique and United engaged in an "Enterprise" to avoid paying the Fund, (Complaint ¶¶ 24-35), United should be held liable for Unique's debt, but asks the Court to make the same claim unavailable to the Bankruptcy Trustee, who is charged with the duty to expose wrongdoing that may have led to bankruptcy. Plaintiffs' position defies reason; the bankruptcy is ongoing, and this Court cannot rule out the possibility that a judgment here that is available to all creditors may disrupt future findings there.

This result is consistent with the "fundamental bankruptcy policy of equitable distribution among creditors." Cumberland Oil Corp. v. Thropp, 791 F.2d 1037, 1042 (2d Cir. 1987); cf. National Amer. Ins. Co., 187 F.3d at 441 ("[T]he trustee should have the first crack" at challenging transactions between bankrupt asset-transferor and alleged-successor transferee); St. Paul, 884 F.2d at 707 ("[T]he bankruptcy proceeding itself calls into play important considerations about the equal treatment of creditors that would be frustrated by continuation" of a separate district court action); Maney, 1998 WL 151023, at *2 (dismissing ERISA action where "[n]one of the cases cited by plaintiffs support the proposition that they are entitled to bring their alter ego claim outside of these proceedings simply because their cause of action is premised on a federal statute."). Plaintiffs have offered no authority to support a divergence from this policy.

In fact, although the issue has not been addressed by the parties or referred to the undersigned, review of the record reveals that the Court may lack subject matter jurisdiction over Plaintiffs' action against United altogether, and not just with respect to standing. See Cap

Gemini Ernst & Young, LLC v. Nackel, 346 F.3d 360, 363 (2d Cir. 2003) (court may, sua sponte, examine its subject matter jurisdiction). In their complaint against United, Plaintiffs allege jurisdiction pursuant to ERISA's 29 U.S.C. § 1132(e), which (with some exceptions) vests the district courts with exclusive jurisdiction over actions brought under that ERISA subchapter.

However, merely pleading that a case arises under ERISA is insufficient on its own to confer federal subject matter jurisdiction. In Peacock v. Thomas, 516 U.S. 349, 116 S.Ct. 862 (1996) ("Peacock"), respondent Thomas filed an ERISA action for unpaid contributions against Tru-Tech, Inc. ("Tru-Tech"), his former employer, adding as a defendant petitioner D. Grant Peacock ("Peacock"), an officer of Tru-Tech. Id. at 351, 116 S.Ct. at 865 Thomas obtained a judgment against Tru-Tech in his favor (but not against Peacock). However, Thomas was unable to successfully execute the judgment, as Peacock settled Tru-Tech's accounts with various creditors while the case was on appeal. Id. at 352, 116 S.Ct. at 865. In the amended complaint filed by Thomas in a subsequent action against Peacock, Thomas asserted a claim for "Piercing the Corporate Veil Under ERISA and Applicable Federal Law." Id., 116 S.Ct. at 865-6.

In reversing the judgment of the Court of Appeals for the Fourth Circuit, the Supreme Court held that "[p]iercing the corporate veil is not itself an independent ERISA cause of action 'but rather is a means of imposing liability on an underlying action.'" Id., at 354, 116 S.Ct. at 866-7 (citing 1 C. Keating & G. O'Gradney, Fletcher Cyclopedia of Law of Private Corporations § 41 p. 603 (1990) ("Fletcher").) Because Thomas failed to allege an underlying action conferring jurisdiction, the Court determined that neither 29 U.S.C. § 1132(e) nor 28 U.S.C. § 1331 could save his claim from dismissal. See 516 U.S. at 354, 116 S.Ct. at 867.

Like the doctrine of alter ego liability, successor liability is a route by which some entity other than the primary tortfeasor is held responsible for a wrong. Cf. 1 Fletcher § 48 p.775

(successor liability focuses on "whether [the new entity] takes on the rights and liabilities of its predecessor"). Plaintiffs' complaint against United does not allege that United violated ERISA. It alleges that Unique used United to facilitate *Unique's* avoidance of its ERISA obligations, and that alone does not vest this Court with subject matter jurisdiction over a dispute with United. Cf. Thomas, 526 U.S. 353, 116 S.Ct. 866 (complaint did not allege violation of ERISA against individual alleged-alter-ego defendant).

Not only might Plaintiffs' allegations fail to state an ERISA claim, but they may also fail to demonstrate that the claim is ancillary to the earlier ERISA claim against Unique.[3] See id. at 347, 116 S.Ct. at 868 ("We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment."). It therefore follows that Plaintiffs' action against United may have neither an independent ERISA basis of jurisdiction nor an ancillary route to same. In the absence of a different basis for federal jurisdiction, the action should be dismissed. See Epperson v. Entertainment Express, Inc., 242 F.3d 100, 106 (2d Cir . 2001) (applying Peacock and distinguishing between "post-judgment proceedings to collect an existing judgment and proceedings, such as alter ego liability and veil piercing, that raise *an independent controversy with a new party in an effort to shift liability*") (emphasis added); Williams v. Pfeffer, 117 F. Supp. 2d 331, 335 (S.D.N.Y. 2000) (citing Peacock and Epperson and dismissing successor liability action where "[t]he facts upon which petitioner relies do not resemble those raised in the original proceeding and would involve detailed investigation and analysis into transactions and entities not related to the first proceeding"); accord Ellis v. All Steel Constr., Inc., 389 F.3d 1031, 1036 (10th Cir. 2004) (dismissing ERISA action against successor entity as "garden-

---

[3] See 28 U.S.C. § 1367 (providing federal courts with jurisdiction over matters "so related to claims in the action within such jurisdiction" as to form the same "case or controversy").

variety judgment-enforcement . . .clearly fall[ing] within the scope of" <u>Peacock</u>); <u>but see</u> <u>Cygnus</u>
<u>Telecomm. Tech., LLC v. Totalaxcess.com, Inc.</u>, 345 F.3d 1372 (D.C. Cir. 2003) (retaining
ancillary jurisdiction where successor purchased 100% of initial defendant's company during the
pendency of the first action and court-adopted settlement agreement between predecessor and
plaintiff conferred court's inherent power to enforce its judgments).

This Court therefore recommends denying Plaintiffs' motion for summary judgment and
further recommends granting Plaintiffs the opportunity to demonstrate the existence of subject
matter jurisdiction.

B. *Claims Against Smith*

Adherence to the same standing analysis leads to a different result when Plaintiffs' claim
against Smith is considered.   The Fund argues that Smith's leasing of the Property to Unique for
commercial purposes brings him within the purview of 29 U.S.C. § 1301(b)(1).[4]  Section
1301(b)(1), for all relevant ERISA purposes, treats as one employer all "trades or businesses"
under "common control."  Any such trade or business found to be controlled by the same person
or group of people as the withdrawing employer (here, Unique) can be held jointly and severally
liable for withdrawal liability to the Fund via the MPPAA amendments to ERISA.  <u>See</u>, <u>e.g.</u>,
<u>Central States Se. and Se. Areas Pension Fund v. Slotky</u>, 956 F.2d 1369, 1374-5 (7th Cir. 1992);
<u>Bowers v. Tranportacion Maritima Mexicana</u>, 901 F.2d 258 (2d Cir. 1990); <u>Amalgamated</u>
<u>Lithographers of Amer. v. Unz & Co., Inc.</u>, 670 F. Supp. 2d 214 (S.D.N.Y. 2009).

However, it is not yet necessary to delve into the "famously complicated and often
tedious" task of applying these terms to the relationship between Smith and Unique.  <u>Unz</u>, 670 F.

---

[4]  Reference to ERISA will be made according to its United States Code section rather than its ERISA-
specific provision name.

Supp. 2d at 222 (<u>citing</u> <u>Chicago Truck Drivers v. El Paso CGP Co.</u>, 525 F.3d 591, 595 (7th Cir. 2008)). For the purpose of determining jurisdiction and standing, it suffices to conclude that the need to apply these ERISA terms and to determine Smith's potential liability under these theories makes the claim of withdrawal liability one that is not general to all creditors of Unique but specific to the Fund. <u>See</u> <u>Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.</u>, 296 F.3d 164, 170 (3d Cir. 2002) ("[T]here is no general interest in the statutorily imposed withdrawal liability to the fund."); <u>I.A.M. Nat'l Pension Fund v. Slyman Indus., Inc.</u>, 901 F.2d 127, 129 (D.C. Cir. 1990) ("[Debtor's] protection from suit pursuant to the Bankruptcy Code simply cannot affect the derivative legal liability of a nonbankrupt affiliate, any more than one joint tortfeasor would be protected because another is in bankruptcy proceedings."); <u>Mangan v. Williams Sys., Ltd.</u>, No. 87 CV 1576 (EHN), 1990 WL 92695, at *2 (E.D.N.Y. June 20, 1990) (denying defendant's motion to dismiss or stay action pending outcome of bankruptcy court's adversary proceedings where cause of action arose under 29 U.S.C. § 1301(b)(1)). Therefore, the Fund has standing to pursue its action in this forum.

II.    <u>Summary Judgment</u>

    A. *Legal Standard*

    A party moving for summary judgment has the burden of establishing that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986); <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir. 2003). Material facts are those that may affect the outcome of the case. <u>See</u> <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact is

considered "genuine" when a reasonable finder of fact could render a verdict in favor of the non-moving party.  See Ricci v. DiStefano, __ U.S. __, 129 S.Ct. 2658, 2677 (2009).

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).  If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied.  See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading."  Anderson, 477 U.S. at 256, 106 S.Ct. at 2510.  Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment.  Id. at 247-48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. See Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

B.  *Merits of Withdrawal Liability Claim*

"Congress enacted the MPPAA to protect the financial solvency of multiemployer pension plans." <u>Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Febar Corp.</u>, 522 U.S. 192, 196, 118 S.Ct. 542, 546 (1997) (collecting cases).  To that end, a contributing employer must pay "withdrawal liability" to the fund, initially calculated by the plan sponsor.  29 U.S.C. §§ 1381(a), 1382; <u>see also</u> <u>Pension Benefit Guar. Corp. v. R.A. Gray and Co.</u>, 467 U.S. 717, 722, 104 S.Ct. 2709, 2714 (1984) (MPPAA amendments to ERISA enacted, in part, "to provide a disincentive to voluntary employer withdrawals"); <u>I.L.G.W.U.  Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.</u>, 846 F.2d 879, 881 (2d Cir. 1988) ("The purpose of withdrawal liability 'is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'") (<u>citing</u> House Report at 67, 1980 U.S. Code Cong. & Ad. News at 2935).

The MPPAA provides specific procedures for swift resolution of withdrawal liability claims which also serve as prerequisites to recovery.  <u>See</u> <u>Levy Frocks</u>, 846 F.2d at 881. Upon the employer's withdrawal from the plan, the plan sponsor must calculate the employer's liability, <u>see</u> 29 U.S.C. § 1382, notify the employer of same, <u>see</u> <u>id.</u> at § 1399(b)(1), and permit the employer to request review of those figures within 90 days, <u>see</u> <u>id.</u> at § 1399(b)(2)(A), followed by arbitration, if necessary.  <u>See</u> 29 U.S.C. § 1401(a)(1); <u>see also</u> <u>Canario v. Lidelco, Inc.</u>, 782 F. Supp. 749, 753 (E.D.N.Y. 1992).   If a duly-notified employer fails to take action in a timely manner, the law is unforgiving.  <u>See</u> 29 U.S.C. § 1401(b)(1) (failure to arbitrate renders "due and owing" the amounts calculated by the plan sponsor on the schedule set in employer's notice);  <u>see also</u> <u>Levy Frocks</u>, 846 F.2d  at 887 (failure to move for injunctive relief while arbitration clock tolled may "lead to a harsh result, but the harshness of the default is largely a

self-inflicted wound"); Slotky, 956 F.2d at 1375 (individual defendant, and sole shareholder in debtor corporation, who could not recall receipt of notice sent to debtor "out of luck, because he never initiated the dispute resolution process created by the statute"). Indeed, an employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the Court's adoption of the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated. See Daniello v. Planned Sys. Integration Ltd., No. 07 CV 1729 (RRM)(VVP), 2009 WL 2160536, at *5 (E.D.N.Y. July 17, 2009) (fund entitled to withdrawal liability amount in alleged proper notice to defendant). In dispute here are the questions of whether Smith is an "employer" and, if so, whether he received notice in compliance with the MPPAA such that he can be held individually liable.

1. *Was Smith an Employer under ERISA?*

ERISA provides that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." See 29 U.S.C. § 1301(b)(1). "[F]or an activity to be a trade or business, a person must engage in the activity: (1) for the primary purpose of income or profit; and (2) with continuity and regularity." National Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Fishing Co., No. 05 CV 6819 (SAS), 2006 WL 1292780, at *2 (S.D.N.Y. May 11, 2006) (citations omitted). "Common control" tracks the term's Internal Revenue Code definition and includes organizations controlled by five or fewer people. See Chicago Truck Drivers, 525 F.3d at 595; UNITE Nat'l Ret. Fund v. Veranda Mktg. Co., Nos. 04 CV 9869 and 06 CV 55 (BSJ), 2009 WL 2025163, at *4 (S.D.N.Y. July 13, 2009) (citing 26 C.F.R. 1.414(c)-2(a)-(b)); see also Slotky, 956 F.2d at 1374 ("Only if a person owns more than

one corporation or other business is he in danger and he must own the corporation in the sense of controlling it.").  Congress intended for § 1301 to prevent employers from fractionalizing and thus insulating themselves from ERISA's requirements.  Swan Fishing, 2006 WL 1292780, at *3.

It is with these principles in mind that the Court turns to the remaining motions for summary judgment.  Plaintiffs argue that Smith operates a separate "trade or business" by virtue of his ownership and control over the Property, on which Unique operated and on which United now operates.  Smith causally notes that he cannot be held liable "for corporate ERISA obligations solely by virtue of his role as officer, shareholder or manager" but offers no meaningful contradiction of the Fund's position, perhaps because Plaintiffs' arguments are due credit.  Not only it is undisputed that Smith was both the sole owner and principal of the withdrawing employer and owner of the Property, but after Unique filed bankruptcy, he then leased the property to United.  Courts have held that the leasing of commercial property is a "trade or business." Compare I.L.G.W.U. Nat'l Ret. Fund v. Minotola Indus., Inc., No. 88 CV 9131 (RJW), 1991 WL 79466, at *2-3 (S.D.N.Y. May 3, 1991) (defendants' ownership and commercial lease of a farm deemed a "trade or business") and Central States Se. and Sw. Areas Pension Fund v. Landvatter, No. 89 CV 5228 (JAN), 1993 WL 5928, at *2 (N.D. Ill. Jan. 4, 1993) ("Courts have uniformly held that leasing property to a withdrawing employer is a 'trade or business' for purposes of § 1301(b)(1)."); with Textile Workers Pension Fund, TWUA v. Oltremare, 764 F. Supp. 287, 289 (S.D.N.Y. 1989) (no individual withdrawal liability based on "mere ownership of real property").  Given Smith's control and ownership over the Property and its use as a commercial space for both the withdrawing employer and the similar company formed in its wake, Plaintiffs have demonstrated that, as a matter of law, he should be considered

an employer for § 1031 purposes.  Cf. Slotky, 956 F.2d at 1374 (finding withdrawal liability to extend to sole shareholder of debtor defendant who was also the proprietor of a real estate business operated for the debtor's benefit).


## 2.  *Notice*

Where both motions for summary judgment fail, however, is with respect to the MPPAA's notice requirement.  As summarized, supra, 29 U.S.C. § 1399(b) requires the plan sponsor to notify the employer "as soon as practicable" after withdrawal of the amount of liability, propose a payment schedule, and demand payment.  The Fund claims that it mailed the Notice of Default and Withdrawal Liability Letter to the Property and has provided the Court with one signed Receipt reading "T. Bowen."  Smith denies receiving either letter or knowing an individual by that name.  Plaintiffs argue that Smith should nevertheless be deemed to have notice of their claim because he is involved with the Property, the Complaint itself provides sufficient notice and because he has been actively involved in the Bankruptcy Proceedings.

The MPPAA does not require formal "service" of notice, only notification of liability, a payment schedule and a demand for payment.  Miller v. Collectron Corp., No. 98 CV 2221 (JG), 1999 WL 730981, at *6 (E.D.N.Y. Sept. 16, 1999); see also Chicago Truck Drivers, 525 F.3d at 598 ("We have been indulgent about the specific form a notice and demand may take.").  Moreover, in order to assist pension funds, the burden is placed on members of control groups to notify each other of liability.  See Unz, 670 F. Supp. 2d. at 223-4.  Therefore, if any of the entities deemed for § 1301(b)(1) purposes to be a component of a "single employer" are notified, they are all deemed notified.  Id.  The problem in this action is not only that Smith denies receipt of both of the letters mailed to the Property and knowledge of the signatory to the

one Receipt in the record, but that United, the occupant of the Property at the time, also denies receipt of the letters and knowledge of T. Bowen. This case is thus distinguishable from those in which at least one potentially-liable entity was properly served with § 1399(b)-compliant notice. Here, even if T. Bowen's receipt of one letter can be imputed to United, Plaintiffs have strangely combined the Receipt with both letters in one exhibit. (Bauman Decl. Ex. 9.) It is thus not apparent which of the two Letters Plaintiffs claim ought to correspond to the Receipt. Of the two, only the Withdrawal Liability Letter contains a § 1399(b)-required payment schedule, and that letter (dated June 26, 2008) is less temporally related to the Receipt (dated July 7, 2008) than is the second letter (dated July 3, 2008), which does not notify the recipient of a payment schedule. Moreover, the Letters are addressed to Unique and do not inform Smith that the Plaintiffs seek to hold him individually liable as an employer. Under these circumstances, summary judgment should be denied. See Canario, 782 F. Supp. at 760-1.

Plaintiffs ask the Court to deem service of the Complaint[5] as actual notice to Smith of his potential withdrawal liability. While Plaintiffs cite cases in which a complaint is deemed sufficient to establish actual § 1399(b) notice, those cases do not involve individual defendants theoretically learning for the first time that they may be held individually liable after the fund provides questionable notification to the withdrawing entity. See, e.g., Bowers, 901 F.2d 258 (complaint sufficient notice to corporate defendant); I.L.G.W.U. Nat'l Ret. Fund v. ESI Group, No. 92 CV 597 (PKL), 2002 WL 999303, at *8 (S.D.N.Y. May 15, 2002) (discussing liability of multiple corporate entities as "single employer"). The remaining case cited by the Fund for this proposition involves a motion to dismiss and cannot be evaluated under the same standard as one for summary judgment. See Board of Trustees of Trucking Emp. of North Jersey Welfare Fund

---

[5] The docket sheet does not contain an executed summons evincing proof of service to Smith. He did however, through counsel, answer the complaint and defend himself in this action.

v. Canny, 900 F. Supp. 583, 591 (N.D.N.Y. 1995) (identifying specific paragraphs in complaint as sufficient in form and substance to meet notice requirement).

Moreover, at the time the complaint was filed, Unique's Chapter 11 petition had been converted to a Chapter 7 liquidation.  A Chapter 7 trustee is "neither an agent of the debtor nor the fiduciary" and, only upon request, must he notify the debtor of the progress in the proceedings. Chicago Truck Drivers, 525 F.3d at 598-9 ("[T]he Fund should at least be charged with showing that the filing of a proof of claim [in bankruptcy court] was an effective means of conveying notice.").

The Court recommends additional fact-finding on the issue of timing and content of the Fund's alleged § 1399(b) notice, as due process requires more when individual liability is at issue. Cf. Canario, 782 F. Supp. at 760-1.  Resolving all inferences against each moving party, summary judgment should be denied.   Accordingly, the Court recommends denying the cross-motions for summary judgment.  No other issue relating to withdrawal liability was meaningfully contested by Smith.

## CONCLUSION

For the foregoing reasons, the Court recommends denying Plaintiffs' motion for summary judgment against United, ordering the parties in the United action to show cause why the case should not be dismissed for lack of subject matter jurisdiction, and denying the cross-motions in the action between Smith and the Fund. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 6 and 72 of the Fed. R. Civ. P., the parties shall have fourteen (14) days from this date to file written objections to the Report and Recommendation. Such objections shall be filed on ECF. Failure to file timely objections will preclude appellate review of any order of judgment that will be entered.


DATED: September 10, 2010                    _____/s_____
            Brooklyn, New York                         Andrew L. Carter, U.S.M.J.